Case No. 25-10999

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In the Matter of: Highland Capital Management, L.P.,

Debtor,

Dugaboy Investment Trust,

Appellant,

v.

Highland Capital Management, L.P., and Highland Claimant Trust

Appellees.

---

Appeal from the United States District Court for the
Northern District of Texas, the Honorable Brantley Starr
Civ. Act No. 3:24-cv-01531-X

---

## APPELLANT'S OPENING BRIEF

---

**STINSON LLP**
Deborah Deitsch-Perez, Esq.
Jeffrey Prudhomme, Esq.
Michael Aigen, Esq.
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
deborah.deitschperez@stinson.com
jeffreyprudhomme@stinson.com
michael.aigen@stinson.com
**ATTORNEYS FOR APPELLANT**

## <u>CERTIFICATE OF INTERESTED PERSON</u>

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal:

1)    <u>Appellees:</u>

> Highland Capital Management, L.P.
> Highland Claimant Trust

2)    <u>Counsel for Appellees:</u>

> Jeffrey N. Pomerantz (CA Bar No. 143717)
> John A. Morris (NY Bar No. 2405397)
> Gregory V. Demo (NY Bar No. 5371992)
> Hayley R. Winograd (NY Bar No. 5612569)
> PACHULSKI STANG ZIEHL & JONES LLP
> 10100 Santa Monica Blvd., 13th Floor
> Los Angeles, CA 90067
>
> -and-
>
> Melissa S. Hayward (Texas Bar No. 24044908)
> Zachery Z. Annable (Texas Bar No. 24053075)
> HAYWARD PLLC
> 10501 N. Central Expy., Ste. 106
> Dallas, Texas 75231

3)    <u>Appellant filing this brief:</u>

> Dugaboy Investment Trust

4)    <u>Counsel for Appellant:</u>

> Deborah Deitsch-Perez, Esq.
> Jeffrey Prudhomme, Esq.

i

Michael Aigen, Esq.
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, TX 75201

By: /s/ Deborah Deitsch-Perez
      Deborah Deitsch-Perez, Esq.

CORE/3524155.0004/231618604.4

## STATEMENT REGARDING ORAL ARGUMENT

While this appeal involves important issues with respect to the rights of parties to receive essential information in a bankruptcy, Appellant believes that the briefs and record are adequate, and oral argument is not necessary for the Court to decide this case.

## STANDARD OF REVIEW

Orders on Rule 12(b)(6) motions to dismiss for failure to state a claim are reviewed under the *de novo* standard of review.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSON ........................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................ iii

STANDARD OF REVIEW ................................................................ iii

TABLE OF CONTENTS ................................................................... iv

TABLE OF AUTHORITIES ...............................................................v

APPELLANT'S OPENING BRIEF ....................................................1

    I.    STATEMENT OF JURISDICTION ....................................1

    II.   STATEMENT OF THE ISSUES .........................................1

    III.  STATEMENT OF THE CASE ............................................3

    IV.  SUMMARY OF ARGUMENT.............................................14

    V.   ARGUMENTS AND AUTHORITIES ....................................14

        A.    Count One Sufficiently States a Claim for Disclosures of Claimant Trust Assets and Request for Accounting. ...............................................14

        B.    The CTA Does Not Bar Appellant From Seeking Additional Financial Information From Appellees. ..................................17

        C.    The Duty of Good Faith and Fair Dealing Precludes Appellees' Argument That the CTA Defeats Appellant's Claims. ............................21

        D.    Counts Two and Three Sufficiently State a Claim for Declaratory Judgment..............................................24

        E.    Count Three Does Not Seek an Advisory Opinion.........................25

    VI.  CONCLUSION .......................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
   Civ. No. 762–N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005)........................... 17

*Angstadt v. Red Clay Consol. Sch. Dist.*,
   4 A.3d 382 (Del. 2010) ........................................................................... 19, 20, 21

*Berry v. Berry*,
   646 S.W.3d 516 (Tex. 2022)................................................................... 15, 16, 17

*Boyd Veigel, P.C. v. Payne*,
   575 Fed. App'x 393 (5th Cir. 2014)...................................................................... 28

*Dunlap v. State Farm Fire and Cas. Co.*,
   878 A.2d 434 (Del. 2005) .................................................................................... 23

*Edwards v. Gillis*,
   146 Cal.Rptr.3d 256 (Cal. Ct. App. 4 Dist., 2012) .............................................. 23

*Est. of Cornell v. Johnson*,
   367 P.3d 173 (Idaho 2016)................................................................................... 23

*Estate of Necastro*,
   Civ. No. 10,538, 1991 WL 29958 (Del. Ch. Feb. 28, 1991) ............................... 19

*Estate of Tigani*,
   Civ. No. 7339-ML, 2016 WL 593169 (Del. Ch. Feb. 12, 2016) ......................... 19

*Frye v. Anadarko Petroleum Corp.*,
   953 F.3d 285 (5th Cir. 2019).......................................................................... 25, 26

*Highland Capital Mgmt., L.P. v. Nexpoint Asset Mgmt., L.P., et al.* (*Matter of
   Highland Capital Mgmt., L.P.*),
   116 F.4th 422 (5th Cir. 2024) .............................................................................. 26

*Hill v. Hunt*,
   Civ. No. 3:07-CV-2020-O, 2009 WL 5178021 (N.D. Tex. Dec. 30, 2009)........ 16

CORE/3524155.0004/231618604.4

*In re National Collegiate Student Loan Trusts Litigation*,
  251 A.3d 116 (Del. Ch. 2020) ............................................................. 22

*In re Tr. Under Will of Flint for the Benefit of Shadek*,
  118 A.3d 182 (Del. Ch. 2015)............................................................... 19

*JPay LLC v. Burton*,
  No. 3:22-CV-1492-E, 2023 WL 5253041 (N.D. Tex. Aug. 15, 2023)................ 29

*Kortum v. Webasto Sunroofs, Inc.*,
  769 A.2d 113 (Del. Ch. 2000)............................................................... 20

*Peneff Holdings LLC v. Nurture Life, Inc., C.A.*,
  No. 2024-0435-BWD, 2024 WL 3964006 (Del. Ch. Aug. 28, 2024) ................ 20

*Rende v. Rende*,
  No. 2021-0734-SEM, 2023 WL 2180572 (Del. Ch. Feb. 23, 2023) ................... 22

*Tigani v. Tigani*,
  Civ. No. 2017-0786-KSJM, 2021 WL 1197576 (Del. Ch. Mar. 30, 2021)......... 19

*Val-Com Acquisitions Tr., v. Chase Home Fin., L.L.C.*,
  434 F. App'x 395 (5th Cir. 2011) .................................................... 27, 28

*Wells Fargo Bank Texas, N.A. v. Foulston Siefkin LLP*,
  348 F. Supp. 2d 772 (N.D. Tex. 2004) .................................................. 14

## Statutes

28 U.S.C. § 158(d) ................................................................................ 1

28 U.S.C. § 1291 ................................................................................... 1

Del. Code Ann. tit. 12, § 2302(d) ............................................................ 20

Del. Code Ann. tit. 12, § 3806(c).............................................................. 22

Del. Code Ann. tit. 12, § 3809 ................................................................ 22

CORE/3524155.0004/231618604.4

Tex. Prop. Code § 111.004(6)....................................................................... 16

**Other Authorities**

Bankruptcy Rule 7001(2)..............................................................................17

Bankruptcy Rule 7001(7)..............................................................................17

Federal Rule of Civil Procedure 12(b)(6) ...................................... 2, 11, 24

Federal Rule of Bankruptcy Procedure 2015............................................ 9

CORE/3524155.0004/231618604.4

## <u>APPELLANT'S OPENING BRIEF</u>

Appellant Dugaboy Investment Trust ("Dugaboy" or "Appellant") submits this opening brief, in support of which it states as follows:

## I.    <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal from a final order of the district court, sitting as a bankruptcy appellate court pursuant to 28 U.S.C. § 158(d). The bankruptcy court issued a Memorandum Opinion and Order Granting Motion to Dismiss Adversary Proceeding in Which Contingent Interest Holders in Chapter 11 Plan Trust Seek a Post-Confirmation Valuation of Assets ("Bankruptcy Court Order"), dismissing Appellant's Complaint to (I) Compel Disclosures About the Assets of the Highland Claimant Trust and (II) Determine (A) Relative Value of Those Assets, and (B) Nature of Plaintiffs' Interests in the Claimant Trust ("Complaint") pursuant to Federal Rules of Civil Procedure 12(B)(1), 12(B)(6) and 12(h)(3). The district court subsequently affirmed the bankruptcy court's order dismissing the Complaint ("District Court Order"). Appellant timely appealed.

## II.    <u>STATEMENT OF THE ISSUES</u>

## <u>ISSUE NO. 1:</u>

Whether the district court, sitting as a bankruptcy appellate court, erred in affirming the dismissal of the adversary complaint on the grounds Appellant was not entitled

to any information when the Complaint sufficiently alleged that Appellant would be entitled to pursue the information were it not for the unlawful acts of Appellees.

## ISSUE NO. 2:

Whether the district court, sitting as a bankruptcy appellate court, erred by affirming the dismissal of Count I under Fed. R. Civ. P. 12(b)(6) on the grounds that Appellant could not prove any facts that would entitle it to relief when the Appellant properly alleged that it has a legal and equitable right to information under Delaware and Texas law.

## ISSUE NO. 3:

Whether the district court, sitting as a bankruptcy appellate court, erred by affirming the dismissal of Count II on the basis that it depended on the survival of Count I, when Count I was improperly dismissed.

## ISSUE NO. 4:

Whether the district court, sitting as a bankruptcy appellate court, erred by affirming the dismissal of Count III because it depended on the survival of Count I, when Count I was improperly dismissed.

## ISSUE NO. 5:

Whether the district court, sitting as a bankruptcy appellate court, erred in affirming the dismissal of Count III as seeking relief based on allegedly hypothetical facts when Appellant was seeking information in the Adversary Complaint to establish

2

actual facts, confirming that Claimant Trust assets exceed the obligations of the bankruptcy estate or must be deemed as such effectively vesting Appellant's contingent trust interests.

## III.  <u>STATEMENT OF THE CASE</u>

Appellant (along with a separate party, Hunter Mountain Investment Trust, which later settled its claims with Appellees) filed its Complaint against Appellees Highland Capital Management, L.P. ("HCMLP") and the Highland Claimant Trust ("Claimant Trust") (collectively, "Appellees" or "Highland") seeking modest relief, specifically to obtain information about the assets and liabilities of the Claimant Trust. A decision in this appeal will further the laudable goal of having transparency, and thus trust, in the bankruptcy process if this Court clearly sets out guidelines for disclosure that parties cannot skirt with crafty drafting.

The Claimant Trust operates pursuant to a Claimant Trust Agreement ("CTA") approved by the bankruptcy court in its Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified), and (II) Granting Related Relief ("Plan").[1] The Claimant Trust exists for the benefit of Claimant Trust Beneficiaries to monetize and liquidate the assets of the HCMLP bankruptcy estate.[2] Appellant has been seeking this information since

---

[1] **ROA.866**.

[2] Complaint to (I) Compel Disclosures About the Assets of the Highland Claimant Trust and (II) Determine (A) Relative Value of Those Assets, and (B) Nature of Plaintiffs' Interests in the Claimant Trust ("Complaint") ¶¶ 1, 64, **ROA.2881**, **ROA.2900**.

June 2022, while HCMLP spent the last several years exhausting significant resources to keep the financial status of the estate out of the public eye and public scrutiny.[3]

Appellant is a documented holder of denominated Contingent Claimant Trust Interests that should have become Claimant Trust Beneficiaries upon the payment of all other creditors in full.[4] The CTA was designed to ensure that Appellant became a Claimant Trust Beneficiary when Claimant Trust assets were sufficient to pay all lower ranked claims in full with interest.[5]

Appellees filed post-confirmation reports (dated October 21, 2022, January 24, 2023, and April 21, 2023) ("Post-Confirmation Quarterly Reports") demonstrating that there is more than enough money in the estate to satisfy legitimate indemnity obligations and to otherwise pay Class 8 and 9 creditors in full.[6] With more than $100 million in assets remaining to monetize (not even including $72 million of related party notes the estate is also trying to recover and which is

---

[3] Complaint ¶ 74, **ROA.2902**; Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust, **ROA.1056-1072**; Reorganized Debtor's Objection to Motion for Determination of Value, **ROA.1102-1111**; Supplemental and Amended Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust, **ROA.1254-1271**; The Dugaboy Investment Trust's Reply in Support of its Determination of Value, **ROA.1301**.

[4] Complaint ¶¶ 1, 58, 65, **ROA.2881**, **ROA.2899**, **ROA.2901**.

[5] *Id.* ¶¶ 65-66, **ROA.2901**.

[6] *Id.* ¶ 2, **ROA.2881-2882**. Under the Plan, General Unsecured Claims were classified as Class 8 and Subordinated Claims were classified as Class 9. *Id.* ¶ 57, **ROA.2899**. The Plan also classified HMIT's Class B Limited Partnership Interest and Class C Limited Partnership Interest as Class 10 and Dugaboy's Limited Partnership Interest as Class 11. *Id.* ¶ 58, **ROA.2899**.

4

sitting in the district court registry), and almost $550 million in assets already monetized, there is enough money to pay the $387 million in allowed creditor claims.[7] At the time of the Bankruptcy Court Order, the Post-Confirmation Quarterly Reports for the first quarter of 2023 showed distributions of $270,205,592 to holders of unsecured claims, which is 68% of the total value of allowed general unsecured claims of $397,485,568.[8] This amount is far greater than what was represented at the time of confirmation of the Plan.[9] None of this was disputed by Appellees or the bankruptcy court.

Appellant previously sought additional financial information without success.[10] Specifically, Appellant asked for more granular information to allow an even more detailed evaluation to specifically identify all of the money raised by the estate and how it has been used and distributed, ***including at least a hundred million dollars not clearly accounted for***, based on Appellees' financial filings.[11] But Appellees steadfastly refuse to provide this information.[12] Instead, Appellees argued that Appellant is wrong—that Appellant is *not in the money*—but Appellees did so without providing any documentation to support their position.

---

[7] *Id.* ¶ 2, **ROA.2881-2882**.

[8] *Id.* ¶ 67, **ROA.2901**. Additionally, the Post-Confirmation Quarterly Reports for the quarter ending June 30, 2024 (of which the Court can take judicial notice), show additional distributions of $43,141,037 to holders of unsecured claims. Bankr. Dkt. No. 4131.

[9] *Id.* ¶ 67, **ROA.2901**.

[10] *Id.* ¶ 17, **ROA.2887**.

[11] *Id.* ¶ 2, **ROA.2881-2882**.

[12] *Id.* ¶ 17, **ROA.2887**.

Unquestionably, the value of the estate, as held in the Claimant Trust, has significantly changed since Plan confirmation.[13] Many of the estate's major assets have been liquidated or sold since then, increasing the value of the estate, and many of the assets held by the estate have significantly increased in value, also increasing the value of the estate.[14] But these current proceedings will enable Appellant to further understand the current value of the estate, evaluate and protect the distributions to which Appellant is entitled, and further determine whether those who should be safeguarding the estate's value are failing to do so by allowing continual waste. Meanwhile, the selective financial information that has been provided suggests that inappropriate self-dealing has occurred, which on its own justifies a full accounting.[15]

Likewise, Appellees have failed to provide an ongoing portrait of the estate's finances. The underlying proceedings were therefore a critical step in Appellant's efforts to challenge Appellees' administration of the estate and to stymie Appellees' attempts to justify unnecessary continued expenditures by the estate at the expense of its own beneficiaries. The refusal to provide access to additional financial information is especially troublesome given the blatant conflict of interest that exists, as described below.

---

[13] *Id.* ¶ 68, **ROA.2901**.
[14] *Id.*
[15] *Id.* ¶ 4, **ROA.2882-2883**.

James P. Seery, Jr. (HCMLP's bankruptcy CEO) ("Seery") is both the Claimant Trustee and the Trust Administrator of the Indemnity Subtrust (to whom the trustee of the Indemnity Subtrust answers).[16] This creates an irresolvable conflict under which Seery purports to have exclusive control over the Indemnity Subtrust— to the detriment of all Claimant Trust Beneficiaries and holders of Contingent Claimant Trust Interests (former equity). As the Trust Administrator of the Indemnity Subtrust, Seery directs administration of all aspects of the Indemnity Subtrust in his sole discretion.[17] The sole beneficiaries of the Indemnity Subtrust are the Indemnified Parties as defined in Section 8.2 of the CTA and subject to its terms, including Seery himself.

Seery has the following duties under the Claimant Trust: (a) to pay the remaining Class 8 and 9 unsecured and subordinated claims in full, (b) to file the GUC Certification, and (c) to vest the Class 10 and 11 equity interests.[18] Seery has the legal duty to timely perform all of these duties and "not unduly prolong the duration of the Claimant Trust."[19] But because he is an Indemnified Party, subject to

---

[16] *See Debtor's Motion for Entry of an Order (1) Authorizing the (A) Creation of an Indemnity Subtrust And (B) Entry into an Indemnity Trust Agreement and (II) Granting Related Relief* ("Subtrust Motion") ¶ 21, **ROA.1034-1035**; Order approving the Subtrust Motion, **ROA.2256-2258**.

[17] *See* Subtrust Motion, ¶ 21, **ROA.1034-1035**; CTA § 6.1(a), **ROA.1143**, which states that Claimant Trustee's determinations concerning reserves for indemnification are "shall not be subject to consent of the Oversight Board, may not be modified without the express written consent of the Claimant Trustee, and shall survive the termination of the Claimant Trustee."

[18] *See* CTA §§ 1.1(h), 1.1(aa), and 5.1, **ROA.1116-1117**, **ROA.1139-1140**.

[19] *See* CTA §§ 2.2(b), 3.2(a), and 3.3(a), **ROA.1120-1121**, **ROA.1124**, **ROA.1127**.

7

the terms of the CTA, Seery has chosen to use the remaining assets of the Claimant Trust to both fund a cash reserve to the Indemnity Subtrust, reportedly now totaling $50 million and, on top of that, to create an additional "indemnity reserve" of some $90 million[20] in the Claimant Trust. Simply put, Seery has unilaterally and self-servingly dedicated the assets of the Claimant Trust to erect an "indemnity wall" to protect himself rather than using available funds consistent with his duties as the Claimant Trustee. These facts justify closer scrutiny of the Claimant Trust's finances.

HCMLP and the Claimant Trust have blocked Appellant (and have expressed an intent to continue to do so) from seeking relief to which it would otherwise be entitled, by contending without evidence that Appellant is purportedly not "in the money"[21]—*i.e.*, able or even likely to recover anything from the Claimant Trust.[22] But as detailed in the Complaint, Appellees are manipulating the estate so they can fabricate an argument whereby they can characterize Appellant as a mere contingent beneficiary without any rights to information.[23] Appellant has alleged (and even

---

[20] Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust at Ex. A, **ROA.2081**.

[21] "In the money" is a colloquial term that has been used here to mean that the net assets of the Claimant Trust are sufficient to make it certain or likely that the Class 10 and/or 11 Claimholders will be entitled to payment from the estate.

[22] Memorandum of Law in Support of Highland Capital Management L.P. and the Highland Claimant Trust's Motion to Dismiss Complaint (hereinafter, "Motion") ¶¶ 2, 10, **ROA.2795**, **ROA.2799-2800**.

[23] Complaint ¶¶ 7, 20; **ROA.2883-2884, ROA.2890**.

proffered evidence) that there is far more money in the estate than Appellees ever disclosed, meaning that the estate should have long since paid off all unsecured creditors in full and certified that Appellant, former equity, was entitled to the remainder of the estate.[24] Appellant is entitled to the information that will enable it to advocate maximize recovery for itself and all former equity.

Given Appellant's interests and Appellees' power to shroud the estate's finances in relative secrecy because of inadequate disclosures mandated by the CTA,[25] and considering Appellees' prior admitted failures to make required disclosures pursuant to Federal Rule of Bankruptcy Procedure 2015,[26] further disclosure of the estate's financial status is warranted and required. Appellant brought three claims in their adversary proceeding: Count One requested an accounting; Count Two requested a declaratory judgment regarding the value of the Claimant Trust assets; and Count Three requested a declaratory judgment and determination regarding the nature of Appellant's interests in the Claimant Trust.[27]

This Complaint was necessary because HCMLP and the Claimant Trust have repeatedly and wrongfully contented that former equity is so far out of the money that former equity holders (Classes 10 and 11 under the Plan) have no rights to any

---

[24] Complaint ¶¶ 18-19, 22, **ROA.2887-2890**; Notice of Filing of the Current Balance Sheet of the Highland Claimant Trust, filed July 6, 2023, **ROA.2077-2082**.

[25] Complaint ¶¶ 41, 74-76, **ROA.2895**, **ROA.2902-2903**; Bankruptcy Court Order at 7-8, **ROA.252-253**.

[26] *Id.*

[27] Complaint, **ROA.2880-2907**.

information, much less distributions.[28] Obtaining access to information is the first necessary step in ensuring that former equity is not deprived of the remaining value of the Highland estate. Without that information, Appellees can continue to dissipate estate assets (for example, by spending tens of million dollars in professional fees and employing lawyers charging over $2000 an hour),[29] and set aside tens of millions for "indemnity," thereby ensuring that Seery continues to engineer the estate to justify a salary of $150,000 a month to preside over dwindling largely static assets.[30]

Appellees filed a Motion to Dismiss the Complaint, arguing that the bankruptcy court did not have subject matter jurisdiction over Counts One and Three. In particular, Appellees argued that those Counts were moot and improperly sought advisory opinions. Appellees also argued that those Counts Three was barred by collateral estoppel and that all Counts failed as a matter of law because Appellant is not a Claimant Trust Beneficiary under the CTA and therefore has no right to financial information.[31]

On May 24, 2024, the bankruptcy court issued its Memorandum Opinion and Order Granting Motion to Dismiss Adversary Proceeding in Which Contingent

---

[28] Motion ¶¶ 9-10, **ROA.2799-2800**; Reorganized Debtor's Objection to Motion for Determining Value, filed August 24, 2022 ¶¶ 1-2, 9-12, and 22-23, **ROA.1102-1103**, **ROA.1105-1106**, **ROA.1109-1110**.
[29] Complaint ¶¶ 9, 15; **ROA.2884**, **ROA.2886-2887**.
[30] Plan ¶ 44, **ROA.898**; CTA § 3.13(a)(i), **ROA.1132**.
[31] Motion ¶¶ 32-34, **ROA.2810-2812**.

CORE/3524155.0004/231618604.4

Interest Holders in Chapter 11 Plan Trust Seek a Post-Confirmation Valuation of Trust Assets ("Bankruptcy Court Order").[32]

The bankruptcy court denied Appellees' motion to dismiss Count One under Rule 12(b)(1) for lack of subject matter jurisdiction and found that Count I was justiciable and not moot.[33] The bankruptcy court, however, granted Appellees' request for a dismissal of Count One under Rule 12(b)(6).[34] The bankruptcy court dismissed Counts Two and Three as "moot or, at least, not ripe such that [they are] not justiciable" because of the dismissal of Count One.[35] The bankruptcy court also opined that Appellant's request for a declaratory judgment under Count Three was not ripe "for the additional reason that Appellants were asking the bankruptcy court to issue an opinion based on a set of 'hypothetical, conjectural, conditional' facts 'or based upon the possibility of a factual situation that may never develop'—the 'likely' vesting of Appellants' contingent interests in the Claimant Trust.'"[36]

On September 9, 2025, the district court issued its Memorandum Opinion and Order, affirming the bankruptcy court's Order dismissing the Complaint ("District Court Order").[37] The district court similarly found that "the language of the Plan and

---

[32] Bankruptcy Court Order, **ROA.246-281**.
[33] *Id.* at 28, **ROA.273**.
[34] *Id.* at 32, **ROA.277**.
[35] *Id.* at 33-36, **ROA.278-281**.
[36] The bankruptcy court did not address Appellees' arguments that Counts Two and Three should be dismissed for a failure to state a claim because it stated that this would be an "impermissible advisory opinion." *Id.* at 35, **ROA.280**.
[37] District Court Order at 1, **ROA.3814**.

11

CTA are controlling" and affirmed the bankruptcy court's Order dismissing Count One.[38] In support of its decision, the district court found that "the CTA provides that 'nothing in this Agreement requires the Claimant Trustee to file any accounting,' except for a limited quarterly report. Therefore, since Dugaboy is not a Beneficiary under the plan and its interest has not yet vested to convert its interest, it cannot seek an accounting under the CTA."[39]

With respect to Appellant's equitable claims, the district court found that the "Plan and the CTA are dispositive, and Dugaboy seeks to reach outside the contracted-for terms to find the relief it seeks," and therefore found that the bankruptcy court's dismissal of Claim One was proper.[40] The district court found that Claims Two and Three were pled as contingent on an accounting under Claim One, and therefore also affirmed the bankruptcy court's dismissal of Claims Two and Three.[41]

As explained in greater detail below, the bankruptcy court erred in dismissing the Complaint and the district court erred in affirming the dismissal for several reasons. Contrary to the bankruptcy court and the district court's decisions, Count One adequately pleaded a claim for an accounting (making the bankruptcy court's

---

[38] *Id.* at 3-4, **ROA.3816-3817**.
[39] *Id.* at 4, **ROA.3817**.
[40] *Id.* at 5, **ROA.3818**.
[41] *Id.* at 5-6, **ROA.3818-3819**.

concomitant dependent dismissal of Counts Two and Three equally erroneous). And the declaratory relief sought in Count Three was not dependent upon "hypothetical facts," as the bankruptcy court concluded.

Appellant's contingent interests already should have vested and thus the law treats Appellant as Claimant Trust Beneficiaries regardless of the language of the CTA. Count Three is only dependent upon a resolution of whether the "Claimant Trust assets exceed the obligations of the bankruptcy estate in an amount sufficient so that all Allowable Claims may be indefeasibly paid,"[42] not upon hypothetical facts. Thus, Appellees' Motion to Dismiss should have been denied.

By concealing the details of the Claimant Trust, Seery, as Claimant Trustee, can continue to frustrate the Plan by refusing to pay the last dollar of Class 9 claims, refusing to file the GUC Certification confirming that Appellant is *in the money*, and thereby render the treatment of all remaining constituents under the Plan, both claimants and former equity, illusory. All claimants, including Appellant, have a right and, given Appellees' positions, a need to understand how the assets of the Claimant Trust are handled.

The issue here is, notwithstanding the limitations in the CTA, does the facts and circumstances here entitle Appellant to an equitable accounting, a modest request considering the amount of money and rights at issue in the bankruptcy.

---

[42] Complaint ¶ 94, **ROA.2906**.

## IV.   SUMMARY OF ARGUMENT

The district court erred by affirming the bankruptcy court's dismissal of Appellant's Complaint. Under both Delaware and Texas law, Appellant is entitled to sufficient information to ascertain whether Appellees are not only depriving Appellant of its residual interest in the Highland estate but also blocking their access to courts to remedy other serious wrongdoing. As such, Appellees' Motion to Dismiss should have been denied.[43]

## V.   ARGUMENTS AND AUTHORITIES

### A.   Count One Sufficiently States a Claim for Disclosures of Claimant Trust Assets and Request for Accounting.

Contrary to the bankruptcy and district court's conclusion, Appellant's Count One, requesting an accounting from Appellees, sufficiently stated a claim for relief. Appellant is entitled to an accounting under applicable Texas law. "Questions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained." *Wells Fargo Bank Texas, N.A. v. Foulston Siefkin LLP*, 348 F. Supp. 2d 772, 783 (N.D. Tex. 2004), *vacated on other*

---

[43] Appellees made several arguments that were not addressed by the bankruptcy court. First, Appellees argued that Count Three was barred by collateral estoppel. Motion ¶ 32, **ROA.2810**. Second, Appellees argued Count One should have been dismissed to the extent it is treated as an equitable accounting claim. Motion ¶ 43, **ROA.2816**. And third, Appellees argued, without any authority, that HMIT should be denied relief because of its "unclean hands." Motion ¶ 45, **ROA.2817-2818**. These arguments were not reached and therefore rejected by the bankruptcy court and therefore Appellant has not addressed those issues in this brief.

14

*grounds*, 465 F.3d 211 (5th Cir. 2006). Appellees concede that an action for an accounting "is an equitable remedy."[44] Thus, Appellees' arguments based on Delaware law are misplaced because the law of the state where the action is sought to be maintained, Texas, applies in this regard.[45]

Under Texas law, courts have jurisdiction over claims seeking to "determine the powers, responsibilities, duties, and liability of a trustee," including specifically "claims for a trust accounting." *Berry v. Berry*, 646 S.W.3d 516, 527–28 (Tex. 2022). "Any interested person" may bring such a claim. *Id.* (citation omitted). An "interested person" includes a "beneficiary" as well as any other "person who is affected by the administration of the trust." *Id.* at 528 (citation omitted). A "beneficiary" is "a person for whose benefit property is held in trust, regardless of the nature of the interest." *Id.* (citation omitted). An "interest" includes "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible." *Id.* (citation omitted). "Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding." *Id.* (citation and internal marks omitted).

---

[44] Motion ¶ 43, **ROA.2816**.
[45] *Id.*¶¶ 39–45, **ROA.2814-2818**.

In this case, the Plan created the Claimant Trust, which was established for the benefit of Claimant Trust Beneficiaries.[46] "Claimant Trust Beneficiaries" include, by definition, "Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests."[47] Appellant is a holder of those partnership interests.[48] As explained above, because Appellant is a beneficiary of the Claimant Trust, it may bring claims under Texas law against the Claimant Trust for a trust accounting.

Appellees argued that Appellant cannot sue for an accounting because its interests are contingent.[49] But under Texas law, the holder of "any interest, whether legal or equitable or both, present or future, vested or *contingent*, defeasible or indefeasible," as "may vary from time to time," may bring a claim for an accounting against the trustee. *Hill v. Hunt*, Civ. No. 3:07-CV-2020-O, 2009 WL 5178021, at *2 (N.D. Tex. Dec. 30, 2009) (citing Tex. Prop. Code § 111.004(6)); *Berry*, 646 S.W.3d at 529 (citing Tex. Prop. Code § 111.004(6)). As in *Berry*, where the Texas Supreme Court recognized that "the contingent nature of [Appellant's] interest in distributions after her father's death does not, on its own, make her insufficiently 'interested' in such claims," Appellant is a beneficiary "with an interest in the

---

[46] Complaint ¶ 64, **ROA.2900**.
[47] *Id.*
[48] Motion ¶ 38, **ROA.2813-2814**.
[49] *Id.*, **ROA.2813-2814**.

'particular purposes of and matters involved in' this proceeding," and therefore they fall "within the class of persons authorized by statute to maintain [their] claims." *Berry*, 646 S.W.3d at 529.[50]

### B.    The CTA Does Not Bar Appellant From Seeking Additional Financial Information From Appellees.

The bankruptcy court also erred in holding that the CTA bars Appellant from obtaining an accounting, or in fact, any financial information at all, because Appellant allegedly holds only Contingent Trust Interests and are not "Claimant Trust Beneficiaries" under the CTA.[51] Similarly, the district court erred in holding that "since [Appellant] is not a Beneficiary under the plan and its interest has not yet

---

[50] Delaware law likewise would entitle Appellant to an accounting. Under well-accepted Delaware law, "[a]n accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to either as a result." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, Civ. No. 762–N, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005). Appellees argued that Appellant's accounting claim fails under Delaware law because it is an equitable remedy rather than a cause of action. Motion ¶ 43, **ROA.2816**. This argument, which is based on principles applied to traditional litigation, ignores the context of Appellant's claims, namely that they are seeking an interest in a bankruptcy estate [where no additional claim is needed] and the Bankruptcy Code requires a party seeking to assess a property interest in the estate to do so by initiating an adversary proceeding. The argument also directly contradicts positions taken previously by Highland. In response to Appellant's attempt to obtain the requested information through a motion (rather than an adversary proceeding), Highland argued: "A request to determine the extent of Dugaboy's potential future interest in the Claimant Trust must be brought as an adversary proceeding under Bankruptcy Rule 7001(2): "a proceeding to determine the … extent of [an] … interest in property …". **ROA.1351** ¶12. Highland also argued that "Dugaboy seeks equitable relief that must be sought, if it all, by an adversary proceeding under Bankruptcy Rule 7001(7)." **ROA.1354** ¶17. The bankruptcy court subsequently adopted this argument regarding the assessment of a property interest in its ruling on this issue. Order Denying Motion [DE # 3382] and Supplemental Motion [DE # 3533] of Dugaboy Investment Trust Due to Procedural Deficiency: Adversary Proceeding is Required, **ROA.1357-1362**. Appellees did not argue and the bankruptcy court never required any sort of additional underlying cause of action to assert the valuation relief sought in the adversary proceeding.

[51] Motion ¶¶ 38-41, **ROA.2813-2815**.

vested to convert its interest, it cannot seek an accounting under the CTA."[52] According to Appellees, the language of the CTA makes clear that only current beneficiaries have rights to information under the CTA. The bankruptcy court agreed, holding that "Plaintiffs, as holders of Contingent Trust Interests, have neither a contractual right to an accounting of the Claimant Trust assets nor a contractual right to whatever limited information rights under the terms of the Plan and CTA that are afforded to the Claimant Trust Beneficiaries."[53] Specifically, the bankruptcy court held that, "under the terms of the CTA, 'Claimant Trust Beneficiaries' is defined to exclude [Appellants], who hold class 10 and 11 unvested, contingent interests in the Claimant Trust, unless and until the GUC Payment Certification has been filed by the Claimant Trust. Until then, [Appellants] 'shall not have any rights under [the CTA]' and will not 'be deemed 'Beneficiaries' under [the CTA].'"[54]

Appellees and the bankruptcy and district court are incorrect. Under the law, Appellant is an intended (albeit contingent) beneficiary of the Claimant Trust giving them equitable rights to investigate and prevent bad faith conduct geared to strip them not only of their interests, but also any means of protecting their interests.

The language of the CTA is not dispositive. Appellant is seeking an equitable remedy under Texas (or if applicable, Delaware) law. Like Texas, "beneficiary,"

---

[52] District Court Order at 4, **ROA.3817**.
[53] Bankruptcy Court Order at 25, **ROA.270**.
[54] *Id.* at 30 (citing the Plan, Art. I.B.44; CTA §§ 1.1(h), 5.1(c) at fn. 73), **ROA.275**.

18

does not have a statutory definition under Delaware law, but Delaware courts follow

the RESTATEMENT (THIRD) OF TRUSTS,[55] which defines beneficiaries to

include contingent beneficiaries:

> *Persons who are beneficiaries: in general.* The "beneficiaries" of a trust are the persons or classes of persons, or the successors in interest of persons or class members, upon whom the settlor manifested an intention to confer beneficial interests (vested **or contingent**) under the trust, plus persons who hold powers of appointment (special or general) or have reversionary interests by operation of law. Also included are persons who have succeeded to interests of beneficiaries by assignment, inheritance, or otherwise.[56]

Delaware courts routinely hold that, when interpreting undefined statutory

terms (analogous to interpreting similar contractual terms), courts must give those

terms a "reasonable and sensible meaning in light of their intent and purpose."

*Angstadt v. Red Clay Consol. Sch. Dist.*, 4 A.3d 382, 390 (Del. 2010). Providing

guidance on how to interpret similar contractual language, Delaware courts refuse

to read statutory language restrictively to exclude certain classes of beneficiaries.

*See Estate of Tigani*, Civ. No. 7339-ML, 2016 WL 593169, at *14 (Del. Ch. Feb.

12, 2016) (holding that the "statute's use of the general term beneficiary, without

any language restricting the class of beneficiary to whom it refers, fairly

encompasses a vested beneficiary subject to divestiture"); *Estate of Necastro*, Civ.

---

[55] *See, e.g.*, *In re Tr. Under Will of Flint for the Benefit of Shadek*, 118 A.3d 182, 195 (Del. Ch. 2015); *Tigani v. Tigani*, Civ. No. 2017-0786-KSJM, 2021 WL 1197576, at *14 (Del. Ch. Mar. 30, 2021), *aff'd*, 271 A.3d 741 (Del. 2022).
[56] RESTATEMENT (THIRD) OF TRUSTS, § 48 cmt. a (2003) (emphasis added).

19

No. 10,538, 1991 WL 29958, at *1 (Del. Ch. Feb. 28, 1991) (rejecting a "restrictive reading" of "beneficiary" under Del. Code Ann. tit. 12, § 2302(d) and instead holding that "Exceptants [whom the parties characterized as "contingent beneficiaries"] have standing . . . based upon their indirect interest in a share of the estate through their status as beneficiaries of a testamentary trust"). In short, Delaware law does not limit the term "beneficiary" to vested beneficiaries to the exclusion of contingent ones. And under Delaware law, any waiver of statutory inspection rights in a contract must be clear and affirmatively expressed in the contract, which the CTA did not do. *Peneff Holdings LLC v. Nurture Life, Inc.,* C.A. No. 2024-0435-BWD, 2024 WL 3964006, at *5 (Del. Ch. Aug. 28, 2024) (citing *Kortum v. Webasto Sunroofs, Inc.*, 769 A.2d 113, 125 (Del. Ch. 2000)).

Moreover, in ascertaining the "reasonable and sensible meaning" of terms, Delaware courts rely on dictionaries as a source of interpretation. *See Angstadt*, 4 A.3d at 390. Black's Law Dictionary defines "beneficiary" to include "[s]omeone who is designated to receive the advantages from an action or change…or to receive something as a result of a legal arrangement or instrument" and includes both "contingent benficiar[ies]" and "direct benficiar[ies]" within the definition without any qualification regarding their rights.[57] By contrast, Black's distinguishes an "incidental beneficiary" as a "third-party beneficiary, who, though benefiting

---

[57] *Black's Law Dictionary* (11th ed. 2019).

indirectly, is not intended to benefit from a contract and thus does not acquire rights under the contract."[58] Nothing in the CTA suggests that Appellant is merely an "incidental beneficiary."

Considering the guidance on the meaning of "beneficiary" as used in statutes in Delaware, the Restatement, and the definition in Black's Law Dictionary, as well as taking into account Appellant's right to an accounting under Texas law discussed above, it is reasonable and sensible to interpret the word "beneficiary" to include contingent beneficiaries. This is especially so considering that nowhere in the CTA is there any restriction or obligation that would prevent Appellees from providing an accounting to Appellant even if its interest was only a Contingent Trust Interest.[59] The bankruptcy court's conclusion to the contrary was contrary to the law.

## C. The Duty of Good Faith and Fair Dealing Precludes Appellees' Argument That the CTA Defeats Appellant's Claims.

There is another reason that the CTA cannot be read to strip Appellant of its right to sufficient information to determine whether Claimant Trust finances are being manipulated to their detriment. Delaware law makes clear that a trust agreement, however worded, may not eliminate the trustee's duty of good faith and fair dealing and indeed, the CTA disclaims no such duty.[60] The district court found,

---

[58] *Id.*
[59] **ROA.1114-1152**.
[60] The CTA is governed by Delaware law. *See* CTA § 11.10, **ROA.1150**.

without any further analysis, that "because the CTA controls and gives no right to the information [Appellant] seeks, [Appellant] cannot prevail on its argument of an implied covenant of good faith and fair dealing."[61] But observance of that duty precludes any conclusion that the language of the CTA destroys Appellant's right to receive information.

Under Delaware law, unless the governing trust agreement says otherwise, the trustee of a statutory trust has those duties set forth in common law, including the duties of loyalty, good faith, and due care. See Del. Code Ann. tit. 12, § 3809; *Rende v. Rende*, No. 2021-0734-SEM, 2023 WL 2180572, at *11 (Del. Ch. Feb. 23, 2023). And while a governing trust agreement may expressly disclaim these duties (although this one does not), Delaware law prohibits the elimination of the duty of good faith and fair dealing. *In re National Collegiate Student Loan Trusts Litigation*, 251 A.3d 116, 185-86 (Del. Ch. 2020) ("While parties may agree to waive default fiduciary duties, the DSTA forbids parties from eliminating the "implied contractual covenant of good faith and fair dealing.") (citing Del. Code Ann. tit. 12, § 3806(c)).

The duties of loyalty, due care, and good faith and fair dealing are particularly important where, as here, Appellant's status as a "beneficiary" under the Agreement is dependent upon Mr. Seery's discretion to file a GUC Certification declaring them as such. "Stated in its most general terms, the implied covenant requires a party in a

---

[61] District Court Order at 5, fn. 19, **ROA.3818**.

contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotations omitted).

As other RESTATEMENT jurisdictions have recognized, acts such as Mr. Seery's refusal to give the GUC Certification and recognize the vesting of Classes 10 and 11 warrants treating those classes as fully vested. "[V]esting cannot be postponed by unreasonable delay in distributing an estate and […] when there is such delay, contingent interests vest at the time distribution ***should*** have been made." *Est. of Cornell v. Johnson*, 367 P.3d 173, 177, 178 (Idaho 2016) (emphasis added) (discussed in RESTATEMENT (SECOND) OF TRUSTS § 198 (1959)); *see also Edwards v. Gillis*, 146 Cal.Rptr.3d 256, 263 (Cal. Ct. App. 4 Dist., 2012) ("[W]hen there is [unreasonable] delay contingent interests vest at the time distribution should have been made.").

As set forth above, the Claimant Trust had sufficient assets to pay unsecured creditors in Classes 8 and 9 in full with interest at least as early as May 2023, and in all probability as early as September 2022.[62] And the CTA requires Mr. Seery as

---

[62] Two of the estate's major private equity positions sold in May 2022, and the remaining largest positions sold in September 2022. The May 2022 assets were Cornerstone Healthcare Group [*see* **ROA.2725-2728**] and MGM [*see* **ROA.2721-2723**]. The September 2022 positions were CCS Medical [*see* **ROA.2730-2733**] and Trussway [*see* **ROA.2735-2736**].

Claimant Trustee to "make timely distributions and not unduly prolong the duration of the Claimant Trust."[63] Had Mr. Seery fulfilled that mandate, he could and should have distributed remaining funds to Classes 8 and 9 in July 2023 at the latest, filed the GUC Certification with the Court, and begun distributing remaining assets to Classes 10 and 11. In short, Appellant's contingent interests *should have vested* many months ago. Therefore, the law treats Appellant as Claimant Trust Beneficiaries regardless of the language of the CTA, meaning Appellant should have a right to the information sought in the Complaint.

### D.     Counts Two and Three Sufficiently State a Claim for Declaratory Judgment.

The bankruptcy court and the district court further erred by concluding that Counts Two and Three, which seek declaratory relief, fail to state a claim under Fed. R. Civ. P. 12(b)(6). The bankruptcy court's sole reason for dismissing Counts Two and Three was its conclusion that those counts are "predicated on the court first granting the relief requested in Count I."[64] The district court similarly affirmed the dismissal on the same grounds.[65] It follows that a reversal of the dismissal of Count I requires reversal of the bankruptcy court's dismissal of Counts Two and Three. For the reasons discussed above, Count One states a valid claim, and therefore Counts

---

[63] CTA § 3.2(a), **ROA.1124**.
[64] Bankruptcy Court Order at 33, **ROA.278**.
[65] District Court Order at 5-6, **ROA.3818-3819**.

CORE/3524155.0004/231618604.4

Two and Three, which are requests for declaratory relief based on entitlement to the same information sought in Count One, should not have been dismissed.

### E.    Count Three Does Not Seek an Advisory Opinion.

The bankruptcy court dismissed Count III on the grounds that it sought an advisory opinion. Specifically, the bankruptcy court concluded that "Plaintiffs' request for declaratory judgment in Count III is not ripe for adjudication for the additional reason that Plaintiffs are asking the court to issue and opinion based on a set of 'hypothetical, conjectural, conditional' facts 'or based upon the possibility of a factual situation that may never develop'—the 'likely' vesting of Plaintiffs' contingent interests in the Claimant Trust, making them Claimant Trust Beneficiaries."[66] The district court did not address this incorrect finding by the bankruptcy court.

"Although [d]eclaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts . . ., declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (internal quotations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties

---

[66] Bankruptcy Court Order at 35, **ROA.280**.

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (quotation omitted).

Here, Count Three is not dependent upon hypothetical facts. Count Three is only dependent upon a resolution of whether the "Claimant Trust assets exceed the obligations of the bankruptcy estate in an amount sufficient so that all Allowable Claims may be indefeasibly paid[.]"[67] Contrary to the bankruptcy court's conclusion, this did not require the court to consider hypothetical future events like the outcome of the appeal in the Notes Litigation,[68] future Claimant Trust expenses, or the nature and extent of indemnification obligations. Instead, Count Three seeks a declaration that, at the time that this proceeding is decided, the Claimant Trust assets exceed the obligations of the bankruptcy estate such that Appellant's Contingent Trust Interests are effectively vested. There is nothing "abstract" about that request. It does not request an advisory opinion, but an opinion based on actual facts as they existed at the time of the decision. Thus, the bankruptcy court should not have dismissed Count Three.

Appellees similarly argued, without authority, that the value of the assets and liabilities of the Clamant Trust at any given point in time is irrelevant to whether Appellant's Contingent Trust Interests are likely to vest because the Contingent

---

[67] Complaint ¶ 94, **ROA.2906**.
[68] *Highland Capital Mgmt., L.P. v. Nexpoint Asset Mgmt., L.P., et al.* (*Matter of Highland Capital Mgmt., L.P.*), 116 F.4th 422, 437 (5th Cir. 2024).

Trust Interests cannot vest until several conditions are satisfied, including the liquidation of assets and expenses being paid.[69] Specifically, Appellees argued that "until these and other critical variables are known, the financial information Plaintiffs seek in their Complaint is meaningless for purposes of determining 'vesting'"[70] and therefore there is no controversy underlying these claims. Even if this conclusion was correct, and it is not, the financial information sought by Appellant is exactly the information that would be necessary under the CTA to determine these variables and to determine when and how much Appellant would be paid once these events occur. It is nonsensical to claim that the requested information is "meaningless" just because the amounts payable to Appellant may change in the future. The exact amounts need not be established at this time.

In support of its finding that Appellant's claims were not ripe, a finding also not addressed by the district court, the bankruptcy court cited *Val-Com Acquisitions Tr., v. Chase Home Fin., L.L.C.*, 434 F. App'x 395, 395-96 (5th Cir. 2011) for the proposition that federal courts are not permitted to issue an opinion based on hypothetical, conjectural and conditional facts.[71] That case, however, is easily distinguished. In that case, plaintiff brought a declaratory judgment seeking a declaration that JP Morgan Chase was the owner and/or holder of a note and deed of

---

[69] Motion ¶ 48, **ROA.2819**.
[70] *Id.*, **ROA.2819**.
[71] Bankruptcy Court Order at 36 fn. 82, **ROA.281**.

trust, a declaration whether Chase Home Finance was the mortgage servicer, and whether the defendants were entitled to enforce the note and deed of trust.[72] The Fifth Circuit affirmed the dismissal of the claim, but only because the complaint never alleged (even on information and belief) that JP Morgan Chase was not the owner and/or holder of the note and deed of trust, that Chase Home Finance was not the mortgage servicer, or that the defendants had no right to enforce the note and deed of trust.[73] The Fifth Circuit noted that "[w]hile there could be a dispute between the parties, absent any allegation that defendants lack the interests they claim in the property, that dispute has not ripened into an actual controversy."[74] On those very different facts, the Fifth Circuit held that "any such dispute is, at this point, hypothetical or conjectural."[75] The Fifth Circuit's reasoning in *Val-Com* has no application here, where Appellant has pled that there is an actual dispute between the parties regarding their respective rights. The bankruptcy court's reliance on *Val-Com* was misplaced, and it should not have dismissed Count Three.[76]

---

[72] *Val-Com Acquisitions Trust*, 434 F. App'x at 395.

[73] *Id.* at 396.

[74] *Id.*

[75] *Id.*

[76] The bankruptcy court also cited *Boyd Veigel, P.C. v. Payne*, 575 Fed. App'x 393, 396 (5th Cir. 2014), an unpublished case, for the same proposition. Bankruptcy Court Order at 36 fn. 82, **ROA.281**. In that case, the plaintiff sought a declaration that debtor's law firm had no right to a fee if a successor firm prevailed in obtaining a judgment. *Boyd Viegel*, 575 Fed. App'x. at 395, 397. In that case, however, the court held that a declaratory judgment could not be based on "a possible future factual situation that may never develop" because "no recovery has been made, and that there may never be a recovery, which would preclude any contingent fee award.... Moreover, the Trustee has not yet demanded a fee, or threatened legal action to recover a fee. Thus several factual issues remain unresolved, and require further development." *Id.* at 397. That is not the

Apparently, Appellees concede this point because they made no mention of the case in its Appellee Brief in the district court. Instead, Appellees cited *JPay LLC v. Burton*, No. 3:22-CV-1492-E, 2023 WL 5253041, at *10 (N.D. Tex. Aug. 15, 2023) for the proposition that a court cannot make an "abstract determination."[77]

*JPay* is also unavailing. In that case, the district court was only addressing whether the plaintiff satisfied the amount-in-controversy requirement for diversity jurisdiction. *Id.* at *1. To satisfy that requirement, the plaintiff argued that the district court should look—not only at the amounts in controversy in that case—but also at the damages it was seeking in another related case. *Id.* at *3. Specifically, the plaintiff was trying to include a "theoretical class" of users of the plaintiff's services that was not before the district court. *Id.* at *10. The district court declined to do this because, to do so, the district court would have been "rendering an opinion about that hypothetical class on hypothetical facts," which constitutes a classic advisory opinion. *Id.* at *10. Here, by contrast, Appellant is seeking a determination of the value of Claimant Trust assets at the time of a decision in this proceeding, and those assets are the only issue in the underlying litigation. Thus, neither *Val-Com*

---

situation here, where Appellant has pled (and presented evidence) that there are sufficient funds to pay Classes 8 and 9 and to declare holders of Contingent Trust Interests vested, and the parties have an actual dispute over how and if those funds currently held by the Claimant Trust should be distributed.

[77] Appellees' Brief at 31, **ROA.3763**.

*Acquisitions* nor *JPay* supports the bankruptcy court's conclusion that Count III called for an impermissible advisory opinion.

## VI.   <u>CONCLUSION</u>

There is something wrong with how this bankruptcy estate has been managed, as the allegations of Appellant's Complaint lay bare. It is equally evident that the bankruptcy estate could have been resolved long ago, and the estate returned to former equity. The Complaint would allow that to happen as was intended, and the Complaint states plausible claims for relief under applicable law. The bankruptcy court therefore erred in dismissing the Complaint and the district court erred in affirming the dismissal. For this and all the reasons set forth above, this Court should reverse the district court's affirmance of the bankruptcy court's Order dismissing Appellant's Complaint and remand the case with instructions to allow the adversary proceeding to go forward.

Respectfully submitted,

**STINSON LLP**

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas Bar No. 24036072
Michael P. Aigen
Texas Bar No. 24012196
Jeffrey Prudhomme
Texas Bar No. 24053696
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201

CORE/3524155.0004/231618604.4

Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com
*Counsel for The Dugaboy Investment Trust*
*and the Hunter Mountain Investment Trust*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 8,947 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point (12-point for footnotes) Times New Roman font.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 10, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez