Case No. 25-10999

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of: Highland Capital Management, L.P.,

Debtor

Dugaboy Investment Trust,

Appellant

v.

Highland Capital Management, L.P. and Highland Claimant Trust,

Appellees

Appeal from the United States District Court
Northern District of Texas
Hon. Brantley Starr
No. 3:24-cv-01531-X

## APPELLEES' BRIEF

<table>
<tr><td>

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
(310) 277-6910

</td><td>

HAYWARD PLLC
Melissa S. Hayward
(Texas Bar No. 24044908)
Zachery Z. Annable
(Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
(972) 755-7100

</td></tr>
</table>

*Counsel for Appellees*

## FRAP 26.1 and 28(a)(1) DISCLOSURE

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is HCMLP GP LLC, a privately held limited liability company. Appellee Highland Claimant Trust is a privately held Delaware trust. No publicly held corporation owns 10% or more of the interests in any of these entities.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Appellees:**

   Highland Capital Management, L.P. and the Highland Claimant Trust

2. **Counsel for Appellees:**

   Jeffrey N. Pomerantz (CA Bar No. 143717)
   John A. Morris (NY Bar No. 2405397)
   Gregory V. Demo (NY Bar No. 5371992)
   Jordan A. Kroop (AZ Bar No. 018825)
   PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA 90067

   -and-

   Melissa S. Hayward (Texas Bar No. 24044908)
   Zachery Z. Annable (Texas Bar No. 24053075)
   HAYWARD PLLC
   10501 N. Central Expy., Ste. 106
   Dallas, Texas 75231

3. **Appellant:**

   Dugaboy Investment Trust

4. **Counsel for Appellant:**

   Deborah Deitsch-Perez
   Jeffrey Prudhomme
   Michael Aigen
   STINSON LLP
   2200 Ross Avenue, Suite 2900
   Dallas, TX 75201

   */s/ Zachery Z. Annable*
   Zachery Z. Annable

# TABLE OF CONTENTS

ISSUES PRESENTED ............................................................................ 1

STATEMENT REGARDING ORAL ARGUMENT .............................. 1

COUNTERSTATEMENT OF THE CASE ............................................ 2

    The Bankruptcy Case .................................................................... 2

    Confirmation of HCM's Plan and  Approval of the Indemnity
        Trust .......................................................................................... 3

    Information Rights Under the CTA ............................................... 9

    The Bankruptcy Court Dismisses the Complaint With
        Prejudice ................................................................................. 10

    Dugaboy Appeals ........................................................................ 13

SUMMARY OF ARGUMENT ........................................................... 15

ARGUMENT ..................................................................................... 17

    Count 1 Fails to State a Claim Under FRCP 12(b)(6) ................. 17

        Dugaboy Has No Right to Financial Information ................. 18

            Dugaboy Has No Information Rights ...................... 18

            The CTA Permissibly Limits Information Rights ... 21

        Texas Law Does Not Apply to Delaware Statutory Trusts  Nor
            Can Dugaboy Use "Equity" to Rewrite the CTA .................... 23

        Appellant Cannot Use the Implied Covenant of Good Faith  and
            Fair Dealing to Rewrite the CTA ............................................ 26

    Dugaboy Fails to Brief the Mootness of Counts 2 and 3 ................. 28

CONCLUSION .................................................................................. 30

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................... 17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................... 17

*Berry v. Berry,*
  646 S.W. 3d 516 (Tex. 2022) ........................................................ 24

*C.C. Port, Ltd. v. Davis-Penn Mortg. Co.,*
  61 F.3d 288 (5th Cir. 1995) .......................................................... 17

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
  2024 U.S. Dist. LEXIS 162355 (N.D. Tex. Sept. 10, 2024) ..... 12, 19, 23, 26

*Dugaboy Inv. Trust & Get Good Trust v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
  2022 U.S. Dist. LEXIS 155600 (N.D. Tex. Aug. 8, 2022), *aff'd* 2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023) ................... 13

*Dugaboy Inv. Trust v. Highland Cap. Mgmt., L.P.,* 2025 U.S. Dist. LEXIS 145789 (N.D. Tex. July 30, 2025) .................... 14, 15, 16, 28

*Dugaboy Inv. Trust v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.),* 2023 U.S. App. LEXIS 19671 (5th Cir. July 31, 2023) .................................................................. 4

*Dugaboy Inv. Trust v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.),* 2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023) .................................................................. 4

*Dunlap v. State Farm Fire & Cas. Co.,*
  878 A.2d 434 (Del. 2005) .............................................................. 27

*Grunstein v. Silva,*
  2009 WL 4698541 (Del. Ch. Dec. 8, 2009) .................................. 25

*Highland Cap. Mgmt. Fund Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
  2022 U.S. Dist. LEXIS 15658 (N.D. Tex. Jan. 28, 2022) ............... 7

*Highland Cap. Mgmt. Fund Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),*
  57 F.4th 494 (5th Cir. 2023) ................................................ 7, 26, 27

*Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.),* 57 F.4th 494, 497 (5th Cir. 2023) ...................................................................... 27

*Hill v. Hunt,* 2009 U.S. Dist. LEXIS 121494 (N.D. Tex. Dec. 30, 2009). ........... 24

*Hollis v. Hill,* 232 F.3d 460 (5th Cir. 2000) .................................................... 24

*Homan v. Turoczy,* 2005 WL 2000756 (Del. Ch. Aug. 12, 2005) ................................. 27

*IKB Int'l S.A. v. Wilmington Trust Co.,* 774 F. App'x 719 (3d Cir. 2019) .......................................... 27

*In re Nat'l Collegiate Student Loan Trs. Litig.,* 251 A.3d 116 (2020) ............................................................ 20, 22

*JUUL Labs, Inc. v. Grove,* 238 A.3d 904 (Del. Ch. 2020) .................................................... 25

*King v. Baylor Univ.,* 46 F.4th 344, 368 (5th Cir. 2022) ............................................ 25

*NexPoint Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),* 48 F.4th 419 (5th Cir. 2022) ......................... 6, 8

*Paul Cap. Advisors, L.L.C. v. Stahl,* 2022 Del. Ch. LEXIS 195 (Del. Ch. Aug. 17, 2022) ...................... 21

*Williams v Lester,* 2023 WL 4883610 (Del. Ch. Aug. 1, 2023) .................................. 23

## STATUTES

12 DEL. CODE ANN. § 3801(a) ............................................... passim

12 DEL. CODE ANN. § 3809 ....................................................... 20

Tex. Prop. Code § 115.001 ....................................................... 24

## RULES

Federal Rule of Civil Procedure ("**FRCP**") 12(b)(6) ...................... 1, 13, 14

FRCP 12(h)(3) ........................................................................ 29

## ISSUES PRESENTED

Dugaboy manufactures five issues for this Court's review, all argumentative variations on these three interrelated issues, more objectively rendered thus:

1.    Whether the District Court erred in affirming the Bankruptcy Court's dismissal of Count 1 under Federal Rule of Civil Procedure ("**FRCP**") 12(b)(6) for failure to state a claim;

2.    Whether the District Court erred in affirming the Bankruptcy Court's dismissal of Count 2 as moot; and

3.    Whether the District Court erred in affirming the Bankruptcy Court's dismissal of Count 3 as moot?

## STATEMENT REGARDING ORAL ARGUMENT

Highland agrees with Dugaboy that oral argument is unnecessary.

# COUNTERSTATEMENT OF THE CASE

**THE BANKRUPTCY CASE**

On October 16, 2019, Highland Capital Management, L.P. ("**HCM**") filed its petition for relief under chapter 11 of the U.S. Bankruptcy Code (the "**Bankruptcy Case**"). The Bankruptcy Case is pending in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**").

On January 9, 2020, James Dondero, HCM's co-founder and former CEO, voluntarily ceded all control positions at HCM because of U.S. Trustee and creditor concerns about his ability to function as an estate fiduciary. The Bankruptcy Court approved the appointment of an independent board consisting of John Dubel, Russell Nelms, and James P. Seery, Jr., to manage the Bankruptcy Case and estate.[1] The Bankruptcy Court subsequently approved the appointment of Mr. Seery as HCM's Chief Restructuring Officer and Chief Executive Officer.

---

[1] BD 339. "**BD**" refers to the Bankruptcy Case docket.

**CONFIRMATION OF HCM'S PLAN AND
APPROVAL OF THE INDEMNITY TRUST**

On November 24, 2020, HCM filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [BD 1472] (the "**Proposed Plan**"), which provided for monetizing HCM's assets for the benefit of its creditors. A key component of the Proposed Plan was the creation of the Highland Claimant Trust (the "**Claimant Trust**" and, together with HCM, "**Highland**") under the *Highland Claimant Trust Agreement* (the "**CTA**") and the Delaware Statutory Trust Act, 12 DEL. CODE ANN. § 3801 *et seq.* (the "**DSTA**"), for the exclusive benefit of the Claimant Trust Beneficiaries.[2] The CTA specified that the Claimant Trust was a Delaware statutory (not common law) trust under the DSTA and that it was to be "governed by, and construed in accordance with[,] the laws of the State of Delaware, including all matters of constructions, validity, and performance."[3]

The Plan classified all unsecured creditors into senior classes—Class 8 (general unsecured claims) and Class 9 (subordinated claims)—that would receive vested trust interests in the Claimant Trust. Former limited partners

---

[2] The final version of the CTA was filed at BD 1811. BD 1875 reflects an amendment to the CTA to correct a scrivener's error.

[3] CTA § 2.1(a) (ROA.1031); § 11.10 (ROA.1061).

in HCM were classified into subordinated classes of interests—Class 10 for holders of senior limited partner interests[4] and Class 11 for holders of subordinated limited partner interests (including Dugaboy with respect to its former 0.1866% limited partnership interest)—that would get only unvested, contingent, subordinated trust interests.[5]

As required by the Plan, creditors holding Class 8 and Class 9 Claims received vested "Claimant Trust Interests" and became "Claimant Trust Beneficiaries." As a former limited partner holding a deeply subordinated Class 11 interest, Dugaboy received a contingent, unvested "Contingent Claimant Trust Interest" that would vest **if, and only if,** (a) the Claimant Trustee certifies that the Class 8 general unsecured claims and Class 9 subordinated claims have been paid in full, (b) all disputed claims in Classes 8

---

[4] In December 2024 and June 2025, following the Complaint and the briefing of the District Court appeal of the Bankruptcy Court Order, two Class 10 interests were allowed in the aggregate amount of over $347 million. With HCM's assets (including the assets of the Indemnity Trust) now well below $75 million, there is no prospect of any excess assets ever being available for distribution to any interest holder in Class 11, including Dugaboy. Creditors in Class 9 have not been paid and interest holders in Class 10 will be impaired—the only question is by how much. Contrary to Dugaboy's baseless assertions, Dugaboy is not now, and will never be "in the money."

[5] Dugaboy has never been a creditor or a holder of any vested beneficiary interest in the Claimant Trust. This Court has previously held that Dugaboy lacked standing to appeal other Bankruptcy Court orders. *See, e.g., Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023); *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. App. LEXIS 19671 (5th Cir. July 31, 2023).

and 9 have been resolved, **and** (c) the Claimant Trust's indemnity obligations have been satisfied. Under the CTA's express terms, Dugaboy is not a beneficiary of the Claimant Trust and can become a Claimant Trust Beneficiary **if, and only if**, the vesting conditions are satisfied.[6]

Concerned that Mr. Dondero would continue his baseless campaign of retribution against HCM and its fiduciaries, the CTA granted the Claimant Trustee the authority to create and manage an indemnification reserve:

> in such amounts and for such period of time, as the Claimant Trustee determines, in good faith, may be necessary and appropriate, which determination shall not be subject to consent of the Oversight Board, may not be modified without the express written consent of the Claimant Trustee, and shall survive termination of the Claimant Trustee.[7]

Under the CTA, the Claimant Trust's indemnification obligations are senior to all obligations to the Claimant Trust Beneficiaries.[8]

---

[6] CTA § 1.1(h) (ROA.1027), § 5.1(c) (ROA.1051); Plan § I.B.27, 44 (ROA.788, 790).

[7] CTA § 6.1(a) (ROA.001054).

[8] *Id.*

Mr. Dondero and multiple entities under his control, including Duga-boy, objected to confirmation of the Proposed Plan.[9] But none of them—including Dugaboy—objected to the CTA.

On February 22, 2021, citing the support of 99.8% of creditors in amount, the Bankruptcy Court overruled the Dondero entities' objections and entered its *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* (the "**Confirmation Order**"),[10] which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "**Plan**").[11]

The confirmed Plan expressly incorporated the CTA and designated Mr. Seery as the trustee of the Claimant Trust (the "**Claimant Trustee**").[12] The Confirmation Order authorized HCM to execute the CTA and create the Claimant Trust.[13]

---

[9] BD 1661, 1667, 1669, 1670, 1673, 1675, and 1676. The Bankruptcy Court found the filing of the Proposed Plan, among other factors, catalyzed Mr. Dondero's litigation onslaught—brought directly and through proxies like Dugaboy—against HCM and its management, including Mr. Seery. *See NexPoint Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 426 (5th Cir. 2022).

[10] ROA.687–776.

[11] ROA.777–842.

[12] Plan § I.B.28 (ROA.788); § IV.J (ROA.819); CTA § 1.1(e) (ROA.1027); Confirmation Order ¶ 45 (ROA.720–21).

[13] Confirmation Order ¶¶ A, G, and H (ROA.747–748, 750).

On June 25, 2021, after HCM was unable to procure cost-effective insurance because of Mr. Dondero's wide reputation in the insurance industry for vexatious litigation, HCM filed a motion seeking authority to (a) create the Highland Indemnity Trust (the "**Indemnity Trust**") as a special purpose trust to hold cash and other assets to secure the indemnification obligations under the Plan, the CTA, and related documents, and (b) appoint Mr. Seery as the Indemnity Trust administrator (the "**Indemnity Trust Administrator**"). BD 2491.

Dugaboy and other Dondero-affiliated entities objected but never challenged Mr. Seery's dual role as Claimant Trustee and Indemnity Trust Administrator or alleged it created a conflict of interest.[14] The Bankruptcy Court overruled their objections and approved the Indemnity Trust, a decision later upheld by this Court.[15]

---

[14] BD 2563.

[15] BD 2599 (ROA.000874–876), *aff'd Highland Cap. Mgmt. Fund Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 15658 (N.D. Tex. Jan. 28, 2022); *aff'd* 57 F.4th 494 (5th Cir. 2023). This Court affirmed the Indemnity Trust's creation and confirmed that the Claimant Trust's indemnification obligations are senior obligations. 57 F.4th at 503 n.7.

On August 11, 2021, the Plan became effective (the "**Effective Date**").
On September 7, 2022, this Court affirmed the Confirmation Order and the
Plan in all respects relevant to this appeal.[16]

Since entry of the Confirmation Order, neither HCM's actual creditors
nor the Oversight Board, which has been actively involved since the Effective
Date, has raised any concerns with the management of Highland, the Claim-
ant Trust, or the Indemnity Trust. In contrast, Mr. Dondero and his con-
trolled affiliates, like Dugaboy, have been litigating with the estate for years
with no end in sight.[17]

On the Effective Date, all limited partnership interests in HCM were
canceled and new entities were created: reorganized HCM; a new general
partner for HCM called HCMLP GP, LLC; the Claimant Trust (administered
by its trustee, Mr. Seery); and a Litigation Sub-Trust (administered by its
trustee, Marc Kirschner). The Indemnity Trust was also created on the Ef-
fective Date. The Claimant Trust and Mr. Seery, as Claimant Trustee, are
overseen by the Claimant Trust Oversight Board.[18]

---

[16] *NexPoint*, 48 F.4th at 424.

[17] Mr. Dondero and his affiliates have commenced more than **60** appeals and petitions
for mandamus or certiorari, at least seven of which remain pending.

[18] CTA § 4.1(ROA.1045–46).

## INFORMATION RIGHTS UNDER THE CTA

By design—and consistent with the DSTA—the CTA grants limited information rights to Claimant Trust Beneficiaries. Significantly, the CTA provides that the Claimant Trustee has *no* duty or obligation to provide an accounting of the Claimant Trust Assets to anyone, including Claimant Trust Beneficiaries: "nothing in this Agreement requires the Claimant Trustee to file any accounting …."[19] And the CTA strictly and explicitly limits the information rights granted to Claimant Trust Beneficiaries:

> The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.[20]

---

[19] CTA § 3.12(a) (ROA.1042).
[20] CTA § 3.12(b) (ROA.1042).

Neither the CTA nor the Plan grants any other information rights, and no other information rights can separately exist: "The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein)."[21] Thus, only Claimant Trust Beneficiaries have *any* information rights; those rights are limited, do not include rights to asset- or subsidiary-level information, and can be further limited by the Claimant Trustee as appropriate to "maintain confidentiality." No person or entity—not a Claimant Trust Beneficiary nor an interloper like Dugaboy— has the right to compel an accounting.

## THE BANKRUPTCY COURT DISMISSES THE COMPLAINT WITH PREJUDICE

Despite the clear terms of the Plan and CTA, on May 10, 2023, Dugaboy filed a complaint[22] **in which it expressly conceded that it is not a Claimant Trust Beneficiary** yet still sought broad disclosures about the Claimant Trust's assets and liabilities, asserting the following three causes of action, for which Dugaboy cited no supporting law or CTA provision:

---

[21] CTA § 5.10(a) (ROA.1053).

[22] ROA.2613–40 (the "**Complaint**"). Dugaboy was joined by Hunter Mountain Investment Trust ("**HMIT**"), which has since resolved all its disputes with Highland, is no longer aligned with Dugaboy or Mr. Dondero, and withdrew its appeal in this matter with prejudice. 3:25-cv-01531-X, Doc 30. Dugaboy has unsurprisingly appealed the Bankruptcy Court's order approving Highland's settlement with HMIT.

*Count 1 (Disclosure of Claimant Trust Assets and Request for an Accounting)*: Count 1 sought an order compelling Highland "to provide information regarding the Claimant Trust assets …."[23]

*Count 2 (Declaratory Judgment Regarding Value of Claimant Trust Assets)*: Count 2 was **expressly contingent** on the Bankruptcy Court's determining that Dugaboy was entitled to the information requested in Count 1 and sought a valuation of the Claimant Trust's assets and liabilities.[24]

*Count 3 (Declaratory Judgment and Determination Regarding Nature of Plaintiff's Interests)*: Count 3 was **expressly contingent** on Count 2 (and, in turn, Count 1) and sought a declaration that Dugaboy was "likely to vest into Claimant Trust Interests, making them Claimant Trust Beneficiaries" some day in the future.[25]

On November 22, 2023, Highland moved to dismiss the Complaint under FRCP 12(b)(1) and 12(b)(6).[26] On December 29, 2023, Dugaboy objected[27]

---

[23] Complaint ¶ 88 (ROA.2637).

[24] Complaint ¶ 90 (ROA.2638) ("Once Defendants are compelled to provide information about the Claimant Trust assets, [plaintiffs] seek a determination from the Court of the relative value of the Claimant Trust assets compared to the bankruptcy estate obligations").

[25] Complaint ¶ 94 (ROA.2639).

[26] ROA.002656–92.

[27] ROA.002699–728.

and improperly alleged, for the first time, new legal and factual bases to support its Complaint, including that: (a) the Claimant Trustee is conflicted because he simultaneously serves as the Indemnity Trust Administrator; and (b) notwithstanding the unambiguous language of the CTA, the Plan, and the DSTA, and explicit concessions in its own Complaint, (i) Dugaboy is a current beneficiary of the Claimant Trust under Delaware common law, (ii) the Claimant Trustee is obligated to vest their contingent, inchoate interests immediately—notwithstanding the CTA's terms and irrespective of the duties owed to senior stakeholders—and that the failure to do so constitutes a breach of the duty of good faith and fair dealing, and (iii) it is entitled to an accounting of the Claimant Trust's assets under Delaware and Texas law. It was inappropriate for Dugaboy to raise new claims in its response not contained in the Complaint.[28]

---

[28] *See Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2024 U.S. Dist. LEXIS 162355, at *15 (N.D. Tex. Sept. 10, 2024) ("However, '[i]t is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time'") (citations omitted).

On May 24, 2024, the Bankruptcy Court dismissed the complaint with prejudice. After dismissing Count 1 under FRCP 12(b)(6), the Bankruptcy Court dismissed Counts 2 and 3 as moot because they were explicitly conditioned on Dugaboy's prevailing on Count 1.

## DUGABOY APPEALS

On June 7, 2024, Dugaboy[29] appealed the Bankruptcy Court Order to the District Court. In its opening brief,[30] Dugaboy argued that the Bankruptcy Court incorrectly dismissed Count 1 because (a) contrary to the admissions in its own Complaint, Dugaboy *is* somehow a beneficiary of the Claimant Trust under Delaware common law, (b) a request for an accounting is allegedly available under Texas law, and (c) the duties of loyalty, good

---

[29] Joined by HMIT, which since voluntarily dismissed its appeal. *See* n.22 above.

[30] District Court Docket ("**DD**") No. 22. Dugaboy's brief in the District Court indulged in numerous material misstatements and distortions of fact repeated in its opening brief to this Court. For example, Dugaboy baselessly asserted that Highland and its management have erected a "wall of silence" and have used that wall to pilfer the estate. No evidence exists to support this spurious allegation. Nor has Dugaboy ever identified any disclosure rule, order, or regulation with which Highland has not complied other than its allegations about Federal Rule of Bankruptcy Procedure 2015.3. Regarding that, the Bankruptcy Court denied Dugaboy's motion to compel compliance with Rule 2015.3 more than three years ago, an order affirmed on appeal. *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),* 2022 U.S. Dist. LEXIS 155600 (N.D. Tex. Aug. 8, 2022), *aff'd* 2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023). It is indisputable that Highland has filed *all* required (a) monthly operating reports from the petition date through confirmation, (b) quarterly operating reports from confirmation through the Effective Date, and (c) post-effective date reports. With no obligation to do so, Highland also filed a pro forma adjusted balance sheet disclosing significant detail concerning the Claimant Trust's assets and liabilities as of May 31, 2023. Bankruptcy Court Order at 14 (ROA.263).

faith, and fair dealing under Delaware common law require that Dugaboy be treated as a beneficiary. **Dugaboy pled none of these claims in the Complaint** and never sought leave to amend the Complaint.

The District Court needed only modest effort to affirm the Bankruptcy Court Order in all respects, ruling that Count 1 must be dismissed because, simply, Dugaboy is not a beneficiary of the Claimant Trust, has no rights under the CTA to information or anything else, cannot rely on equitable arguments under either Texas or Delaware law, and has not stated a claim on which relief can be granted under FRCP 12(b)(6).[31] The District Court was particularly blunt in responding to Dugaboy's "dispositive issue in this appeal: 'notwithstanding the limitations in the CTA, do the facts and circumstances here entitle [Dugaboy] to an equitable accounting and the declaratory relief requested[?]'":

> Because the language of the Plan and CTA are controlling, the Court answers with an emphatic **No**, and **AFFIRMS** the bankruptcy court's order.[32]

---

[31] *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.,* 2025 U.S. Dist. LEXIS 145789 (N.D. Tex. July 30, 2025) (the "**District Court Opinion**").

[32] District Court Opinion at *4 (emphasis in original).

## SUMMARY OF ARGUMENT

Dugaboy concedes it is not and will not become a Claimant Trust Beneficiary—and thus lacks any information rights—unless and until, among other conditions, the Claimant Trust's *realized* gains pay all senior Claimant Trust beneficial interests, obligations, and expenses.[33] Yet Dugaboy asks this Court to overturn the Complaint's dismissal to allow it to seek relief unavailable even to the Claimant Trust's *actual* beneficiaries.

Dugaboy ignores the unambiguous terms of the governing documents and applicable law. They bar Dugaboy's claims. The Bankruptcy Court was correct to dismiss the Complaint with prejudice. The District Court was correct to affirm that dismissal. This Court should likewise affirm.

**First**, the Bankruptcy Court correctly ruled that Count 1 failed to state a claim on which relief can be granted under FRCP 12(b)(6):

- In its Complaint, Dugaboy conceded that it is not a Claimant Trust Beneficiary and has neither a contractual right to an accounting of the Claimant Trust assets nor a contractual right to the limited information rights the CTA accords to actual Claimant Trust Beneficiaries.[34]

---

[33] *See also* District Court Opinion at *2.

[34] *See* District Court Opinion at *4–5 ("since Dugaboy is not a Beneficiary … it cannot seek an accounting under the CTA").

- Dugaboy failed to allege any facts entitling it to equitable relief. Even had it done so, the Bankruptcy Court lacked authority to grant equitable relief because Dugaboy's contingent rights and Highland's obligations are clearly set forth in the Plan and CTA.[35]

- Dugaboy's contradictory argument that it *is* a Claimant Trust Beneficiary—made for the first time in opposition to Highland's motion to dismiss—relies on inapposite law from Delaware and Texas and ignores the clear provisions of the CTA and applicable law, including the DSTA.

- Dugaboy's new claim for breach of the covenant of good faith and fair dealing—again, made for the first time in opposition to Highland's motion to dismiss—fails because the Bankruptcy Court lacked the power to abrogate unambiguous contractual terms and create new rights for Dugaboy.[36]

**Second**, because Dugaboy expressly predicated Counts 2 and 3 on the Bankruptcy Court's granting Count 1, those Counts were moot and had to be dismissed as not justiciable.[37]

---

[35] *See* District Court Opinion at *4 ("As to a relief in equity, both Delaware and Texas recognize that equitable relief is not available where the terms of a contract are clear…. Dugaboy argues … that '[t]he language of the CTA is not dispositive.' The Court disagrees. **The Plan and the CTA are dispositive**") (citations omitted, emphasis added).

[36] *See* District Court Opinion at *5 n.19 ("because the CTA controls and gives no right to the information Dugaboy seeks, Dugaboy cannot prevail on its argument of an implied covenant of good faith and fair dealing").

[37] *See* District Court Opinion at *5.

## ARGUMENT

For the reasons stated below and in the concise District Court Opinion, this appeal is meritless. The Court should affirm the District Court Opinion affirming the Bankruptcy Court's dismissal of the Complaint with prejudice.

### COUNT 1 FAILS TO STATE A CLAIM UNDER FRCP 12(B)(6)

The Bankruptcy Court correctly ruled that Count 1 fails under FRCP 12(b)(6) to state a claim on which relief can be granted. To survive a motion to dismiss under FRCP 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[38] Dismissal is proper under FRCP 12(b)(6) when, taking the facts alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that would entitle it to the relief it seeks."[39] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[40]

---

[38] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[39] *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995).

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

## Dugaboy Has No Right to Financial Information

Dugaboy is not a Claimant Trust Beneficiary and has no right to information regarding the Claimant Trust under the CTA and the DSTA.[41]

### *Dugaboy Has No Information Rights*

Dugaboy holds only a contingent and unvested "Contingent Trust Interest" and therefore is not a "Beneficiary" under the CTA. Dugaboy grudgingly acknowledges this, as it must.[42] Thus, Dugaboy has *no rights* under the CTA, which grants limited information rights only to actual Claimant Trust Beneficiaries.[43] And even actual Claimant Trust Beneficiaries are expressly precluded from seeking an accounting of the Claimant Trust's assets.[44]

Ignoring the CTA's unambiguous plain English, Dugaboy demands financial information based on nothing but the bald assertion that it is "unable to determine" whether its contingent interest may ever vest.[45] Dugaboy may be frustrated that it neglected to negotiate in the CTA the same rights as actual Claimant Trust Beneficiaries, but there is no basis in law or in equity for Dugaboy to obtain the confidential financial information it demands.

---

[41] Even if Dugaboy were a Claimant Trust Beneficiary—and it admits it is not—it would have no right to the broad information it seeks. CTA § 3.12(b) (ROA.1042).

[42] Complaint ¶¶ 59-60, 80 (ROA.002632–33; ROA.2636); Opening Brief at 18.

[43] CTA § 3.12(b) (ROA.1042).

[44] CTA § 3.12(a) (ROA.1042).

[45] Complaint ¶ 83 (ROA.2637).

Recognizing the corner it painted it itself into, Dugaboy improperly alleged for the first time in opposition to Highland's motion to dismiss—reiterated to the District Court and now at length in its Opening Brief—that it is a beneficiary under Delaware common law notwithstanding the DSTA and the CTA's clear language. Of course, an argument raised for the first time in response to a motion to dismiss cannot be used to defeat a motion to dismiss.[46] Improper or not, Dugaboy is wrong.

In its zeal to advance this meritless argument, Dugaboy mischaracterizes Delaware law. Dugaboy would have it that *all of* Delaware trust law lacks a definition of "beneficiary" and that the definition of "beneficiary" in the Restatement (Third) of Trusts should apply.[47] Dugaboy predicates its entire argument on the erroneous assumption that Delaware common law applies to the CTA. It does not. The CTA expressly provides that the Claimant Trust is created under and controlled by the DSTA. **Under the DSTA, the "beneficial owner" of a trust is determined by the trust's governing instrument**. *See* 12 DEL. CODE ANN. § 3801(a) (defining "beneficial owner"

---

[46] *DAF*, 2024 U.S. Dist. LEXIS 162355, at *15 ("it is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time") (citation and internal quotation marks omitted).

[47] Opening Brief at 18–21.

(*i.e.*, beneficiary) of a Delaware statutory trust as "any owner of a beneficial interest in a statutory trust, the fact of ownership to be determined and evidenced ... in conformity to the applicable provisions of the governing instrument of the statutory trust").[48] Whether or how Delaware common law or the Restatement defines "beneficiaries" is irrelevant to a **Delaware statutory trust governed by the DSTA**.[49] Under the DSTA, determining whether Dugaboy is a "beneficiary" of the Claimant Trust begins and ends with the CTA's unambiguous terms,[50] which exclude Dugaboy from the definition of "Claimant Trust Beneficiary." Dugaboy has reluctantly admitted this from the outset.

Even if the Restatement applied—it does not—Dugaboy's argument would still fail. In *Paul Capital Advisors, L.L.C. v. Stahl,* the Delaware Chancery Court looked to the Restatement to determine whether a party

---

[48] *See also In re Nat'l Collegiate Student Loan Trs. Litig.,* 251 A.3d 116, 190 (2020) (relying on the definition of "beneficial owner" under the DSTA to determine which holders of interests in a statutory trust were owed fiduciary duties under Delaware law).

[49] Because the DSTA expressly defines "beneficial owners," the DSTA expressly precludes the application of any other definition of beneficiary, including those in the Restatement. 12 DEL. CODE ANN. § 3809 ("**Except to the extent otherwise provided in the governing instrument of a statutory trust or in this subchapter**, the laws of this State pertaining to trusts are hereby made applicable to statutory trusts") (emphasis added).

[50] Just as the Bankruptcy Court did, the District Court regarded the CTA's terms to be "clear," "controlling," and "dispositive." District Court Opinion at *5.

was a "beneficiary" of a Delaware common law trust (*not* a statutory trust).[51] The Chancery Court applied the Restatement's definition and ruled that a trust's "beneficiaries" are the **persons defined as "beneficiaries" in the trust's governing document.**[52] Here, as in *Stahl*, the CTA and Plan explicitly manifest Highland's intent to *exclude* Dugaboy from the definition of "Claimant Trust Beneficiary" unless and until certain specified conditions are met.[53] Even the Restatement does not help Dugaboy.

### *The CTA Permissibly Limits Information Rights*

Even were Dugaboy an actual Claimant Trust Beneficiary, its information rights would still be strictly limited by the CTA and it would still not be entitled to the extensive information it seeks. The DSTA governs information rights for Delaware statutory trust beneficiaries and treats the trust's agreement as paramount:

---

[51] 2022 Del. Ch. LEXIS 195 (Del. Ch. Aug. 17, 2022; as corrected, Aug. 25, 2022).

[52] *Stahl,* 2022 Del. Ch. LEXIS 195, at *27–28 ("According to the Defendants, [the fact that the trust agreements specify who the beneficiary is] ends the inquiry—the Plaintiffs are not beneficiaries. I agree").

[53] For example, before Dugaboy's Class 11 interest can vest, all disputed Claims 8 claims must be finally resolved. Yet litigation over Class 8 claims continues even today. *See Highland Cap. Mgmt., L.P. v. Daugherty*, Adv. Pro. No. 25-03055.

> **Except to the extent otherwise provided in the governing instrument of a statutory trust**, each beneficial owner of a statutory trust ... has the right, **subject to such reasonable standards ... as may be established by the trustees** ... to obtain from the statutory trust ... information regarding the business and financial condition of the statutory trust ....[54]

Here, consistent with DSTA § 3819(a), the CTA *does* "otherwise provide." Under the CTA and the Plan, only "Claimant Trust Beneficiaries" have *any* information rights. Those rights are limited, do not include rights to asset or subsidiary-level information, and can be further limited by the Claimant Trustee as appropriate to "maintain confidentiality."[55] And the CTA excuses the Claimant Trustee from providing an "accounting" to anyone.[56]

Dugaboy is not a beneficiary of the Claimant Trust, has **no right** to information regarding the Claimant Trust, and has **no right** to compel HCM or the Claimant Trust to do anything. It really is that simple.

---

[54] 12 Del. C. § 3819(a) (emphasis added); *see also Nat'l Collegiate*, 251 A.3d at 150 (trust agreements "are the governing instruments of the Trusts under the DST Act").

[55] CTA § 3.12(b) (ROA.1042).

[56] CTA § 3.12(a) (ROA.1042).

**Texas Law Does Not Apply to Delaware Statutory Trusts
Nor Can Dugaboy Use "Equity" to Rewrite the CTA**

Unable to prevail under the CTA, the Plan, the DSTA, or even Delaware common law, Dugaboy shifts its focus westward in the vain hope that Texas law somehow gives it a right to an accounting that Delaware law does not.[57] Dugaboy fares no better in Texas than it does in Delaware.

Dugaboy cites no law supporting its argument that Texas law applies to the Claimant Trust, created under and expressly governed by the Delaware Statutory Trust Act. Instead, Dugaboy attempts to craft an argument based entirely on Highland's unremarkable acknowledgment in its motion to dismiss that an accounting is an "equitable remedy rather than a cause of action"[58] governed by state law. Dugaboy misrepresents Highland's position. Highland established in its motion that there exists no cause of action—equitable or otherwise—for an accounting under Delaware law.[59] An accounting is, however, an equitable *remedy* that may be imposed on a trust fiduciary.[60] Dugaboy persists, now for the third time, in mischaracterizing

---

[57] Again, Dugaboy did not assert this claim in its Complaint, so the claim is not properly before the Court. *DAF*, 2024 U.S. Dist. LEXIS 162355, at *15.

[58] Opening Brief at 17 n.50.

[59] ROA.2816.

[60] *Williams v Lester*, 2023 WL 4883610, at *3 (Del. Ch. Aug. 1, 2023).

Highland's position, contending that, because Highland has "conceded" that an accounting is an equitable *remedy*, Highland has also somehow "conceded" that an accounting is an equitable *claim* that can be pursued under substantive Texas law. This illogical argument should persuade no one.

In any case, Dugaboy's argument that a cause of action for an accounting exists under Texas law fails. Dugaboy cites two cases in support: *Berry* and *Hill*.[61] Neither case applied Texas common law or equity; rather, both relied exclusively on Title 9 of the Texas Property Code, which governs the creation, operation, and termination of *Texas* trusts.[62]

Texas trust law does not govern the Claimant Trust—the Delaware Statutory Trust Act does. The DSTA controls the Claimant Trust's operations and internal affairs, governs the CTA's enforcement and interpretation, and dictates who is a beneficiary and what rights parties have to information about the Claimant Trust's assets.[63] Dugaboy has *no* right to an

---

[61] *Berry v. Berry*, 646 S.W.3d 516 (Tex. 2022); *Hill v. Hunt*, 2009 U.S. Dist. LEXIS 121494 (N.D. Tex. Dec. 30, 2009).

[62] *Berry*, S.W. 3d at 527–28 (analyzing Tex. Prop. Code, Tit. 9 (Trusts), § 101.001, *et seq*); *Hill*, 2009 U.S. Dist. LEXIS 121494, at *7-10 (same); *see also* Tex. Prop. Code § 111.035 (Title 9 governs the duties and obligations of a trustee of a *Texas* trust).

[63] *See, e.g.*, *Hollis v. Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000) ("Texas … follows the 'internal affairs doctrine.' … [T]he internal affairs of the foreign corporation, 'including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares,' are governed by the laws of the jurisdiction of incorporation") (citations omitted); *JUUL Labs, Inc. v. Grove*, 238 A.3d 904, 913–18 (Del.

accounting or information under applicable Delaware law and cannot substitute Texas statutory trust law—even Dugaboy's misinterpretation of it—to avoid that ineluctable conclusion.

Regardless of what state's law applies, equitable relief is not available where, as here, the operative trust documents (*i.e.*, the Plan and the CTA) clearly establish the parties' rights and obligations. A trust document that clearly addresses an issue "cannot be rewritten on equitable grounds … a party is bound by the plain meaning of clear and unequivocal contract terms."[64] Said this Court, "Texas courts have repeatedly expressed this limit. Once a court determines that a 'valid contract … imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy.' In other words, when 'the contract addresses the matter at issue, [the party invoking equity] is **limited to the contract rather than equity** when determining liability.'"[65]

---

[64] *In re Am. Home Mortg. Holdings, Inc.*, 386 F. App'x 209, 212-13 (3d Cir. 2010).

[65] *King v. Baylor Univ.*, 46 F.4th 344, 368 (5th Cir. 2022) (citations omitted); *see also Grunstein v. Silva*, 2009 Del Ch. LEXIS 206, at *18–19 (Del. Ch. Dec. 8, 2009) ("Where [fiduciary] rights arise from a contract that specifically addresses the matter at issue, the court evaluates the parties' conduct within the framework they themselves crafted, instead of imposing more broadly defined equitable duties").

Ch. 2020) (finding internal affairs doctrine precluded a stockholder's use of the California Corporations Code to inspect books and records of a Delaware corporation).

Here, the CTA explicitly provides that Dugaboy is not a Claimant Trust Beneficiary and has no rights under the CTA and that no party—not even a Claimant Trust Beneficiary—has the right to an accounting. Whether a claim or a remedy, the CTA's plain language bars Dugaboy from obtaining financial information concerning the Claimant Trust on equitable grounds.

## Appellant Cannot Use the Implied Covenant of Good Faith and Fair Dealing to Rewrite the CTA

Dugaboy baselessly alleges a breach of the implied duty of good faith and fair dealing in a desperate attempt to recharacterize its contingent, inchoate interests and magically transform itself into a beneficiary of the Claimant Trust by arguing that "the Claimant Trust had sufficient assets to pay unsecured creditors in Classes 8 and 9 in full with interest …."[66]

Dugaboy misstates both fact and law. Dugaboy imagines without basis that the Claimant Trust possesses sufficient assets because it is unjustifiably reserving too much for indemnification claims. This Court, however, already rejected this argument and Dugaboy's attempts to curtail the Claimant Trust's ability to secure its indemnification obligations.[67]

---

[66] Opening Brief at 23. Again, this claim was not asserted in the Complaint and is not properly before this Court. *DAF*, 2024 U.S. Dist. LEXIS 162355, at *15.

[67] *Highland*, 57 F.4th at 503–04. The CTA and the Plan give the Claimant Trustee the right and obligation to set indemnification reserves to protect the post-Effective Date estate and its fiduciaries from harassing litigation. The Indemnity Trust is the court-

At bottom, Dugaboy attempts, for the third time, to invoke the implied covenant of good faith and fair dealing to rewrite the CTA's bargained-for terms, which, among other things, allow the Claimant Trustee to establish and maintain indemnification reserves and limit information rights.[68] "Courts will not use the implied covenant of good faith to override the rights and responsibilities that were bargained for in a trust agreement."[69]

The CTA's terms explicitly address the Claimant Trustee's duties to provide information regarding the Claimant Trust. Those duties do not run to Dugaboy because Dugaboy is not a Claimant Trust Beneficiary. Dugaboy cannot use whatever implied covenant of good faith and fair dealing may exist under the DSTA to compel the Claimant Trustee to disclose information he is under no obligation to disclose.

---

approved vehicle securing the Claimant Trust's obligations to all parties entitled to indemnification under the CTA and Plan. *Id.* Indemnification rights are "senior priority obligations to distributions to the Claimant Trust's beneficiaries …" *Id.* n.7.

[68] Highland and its official committee of unsecured creditors negotiated the CTA and presented it as an integral part of the Plan. *See Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 57 F.4th 494, 497 (5th Cir. 2023). No party, including Dugaboy, objected to it.

[69] *IKB Int'l S.A. v. Wilmington Tr. Co.*, 774 F. App'x 719, 727-28 (3d Cir. 2019)) (citing *Homan v. Turoczy*, 2005 WL 2000756 (Del. Ch. Aug. 12, 2005)); *see also Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) ("Existing contract terms control … such that implied good faith cannot be used to circumvent the parties' bargain or to create a free-floating duty unattached to the underlying legal document") (citation and internal quotation marks omitted).

### DUGABOY FAILS TO BRIEF THE MOOTNESS OF COUNTS 2 AND 3

Dugaboy spends more than six pages of its Opening Brief regurgitating nearly verbatim its appellate arguments to the District Court regarding the Bankruptcy Court's dismissal of Counts 2 and 3 of the Complaint without even mentioning the District Court's sole, simple basis for affirming the dismissal of those counts: that those counts were rendered moot by the proper dismissal of Count 1.

The District Court did not address arguments both Dugaboy and Highland made below regarding declaratory relief, advisory opinions, and ripeness because it did not need to. Instead, the District Court simply noted in one short paragraph that Dugaboy's own Complaint pled both Counts 2 and 3 "as contingent on an accounting under [Counts] 1 and 2, respectively."[70] The District Court affirmed the Bankruptcy Court's dismissal of those counts because "Dugaboy is not entitled to relief under [Count] 1," rendering both Counts 2 and 3 "moot."[71]

---

[70] District Court Opinion at *6.

[71] *Id.*

Instead of addressing the District Court's basis for affirming the Bankruptcy Court's dismissal of Counts 2 and 3 or the Bankruptcy Court's true basis for dismissing those counts—that those counts were moot *as Dugaboy pled them*—Dugaboy spills considerable ink arguing against several alternate arguments other than mootness that Highland included in its motion to dismiss. But the crux of the Bankruptcy Court's decision to dismiss Count 2 was that Dugaboy's "request for declaratory relief in Count II is predicated on the court granting the relief requested in Count I and … Count II has now been rendered moot" and "not justiciable," dismissible under FRCP 12(h)(3) "for lack of subject matter jurisdiction."[72] The Bankruptcy Court dismissed Count 3 for the same reason.[73]

While the Bankruptcy Court briefly discussed other arguments Highland made (including that Count 3 sought an advisory opinion, an argument sounding in Constitutional concepts of ripeness), the *sine qua non* of the Bankruptcy Court Order with respect to both Counts 2 and 3 is that they must be dismissed because Dugaboy pled them as contingent on prevailing

---

[72] Bankruptcy Court Order at 33–34 (ROA.279–80).

[73] Bankruptcy Court Order at 35 (ROA.281).

on Count 1. Because Count 1 must be dismissed for failure to state a claim on which relief can be granted, Counts 2 and 3 are moot.

Considering that the District Court reviewed the Bankruptcy Court Order *de novo* and based its affirmance solely on the facial mootness of Counts 2 and 3 as Dugaboy pled them, it is puzzling that Dugaboy chose to ignore in its Opening Brief the Bankruptcy Court's dismissal of Counts 2 and 3 on mootness grounds. The unavoidable result of that choice is that Dugaboy has waived any argument on appeal that the Bankruptcy Court erred in that regard.

On the sole basis expressed by the Bankruptcy Court and reiterated succinctly by the District Court in its affirmance—that Counts 2 and 3 were dismissed as moot because Count 1 had to be dismissed for failure to state a claim—this Court should affirm the Bankruptcy Court's dismissal of Counts 2 and 3.

## CONCLUSION

The District Court properly affirmed the Bankruptcy Court's dismissal of the Complaint with prejudice. Just as emphatically as the District Court did, this Court should affirm.

December 10, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (AZ Bar No. 018825)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email:  jpomerantz@pszjlaw.com
　　　　jmorris@pszjlaw.com
　　　　gdemo@pszjlaw.com
　　　　jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Email:  MHayward@HaywardFirm.com
　　　　ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management,*
*L.P., and the Highland Claimant Trust*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32

1.    This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, including footnotes and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,603 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced serif typeface (Century Schoolbook) at 14-point type (12-point for footnotes).

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I certify that, on December 10, 2025, a copy of the foregoing brief was served electronically on all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable